SAMUEL K. HAINES, APPELLANT, V. ANDREW J. SPAN-
            OGLE ET AL., APPELLEES.

Specific Performance. A verbal contract for the sale of real
    estate which is clearly established, and under which possession
    of the premises has been taken and acts of part performance done,
    will be specifically enforced.

APPEAL from the district court of Hamilton county.
Heard below before NORVAL, J.

*J. H. Smith,* for appellant.

*Hainer & Kellogg,* for appellees.

MAXWELL, J.

This is an action to enforce the specific performance of
a verbal contract for the west half of the south-east quarter
of section twenty-three, in township ten north, range eight
west, in Hamilton county. On the trial of the cause in
the court below the issues were found in favor of the de-
fendants, and the action dismissed. The plaintiff appeals.

It appears from the testimony that the parties were
formerly residents of Pennsylvania; that about the year
1876 one or both of the defendants visited this state, and
both removed here in 1879. The plaintiff seems to have
been in the employment of one or both of the defendants,
and came with them in charge of their horses. Prior to
removing to this state the defendants seem to have prom-
ised the plaintiff to aid him in procuring a piece of land.
The defendants purchased a tract of land of the Union
Pacific Railway Company at $4 per acre, and appar-
ently in pursuance of their promise to the plaintiff agreed
to let him have the land above described at $5 that
being the price they considered land of that kind to be
worth.

There seems to have been a dispute between the parties
as to the price, the plaintiff insisting that he was to have
the land at cost price ($4 per acre), while the defendants
contended that $5 per acre was the average cost price of
that quality of land.   The plaintiff afterwards assented to
the price asked.   In the year 1880 or 1881 the plaintiff
broke up, as he testifies, about twenty acres of the land in
question, and so far as appears had the exclusive possession.
In the fall of 1881 one of the defendants presented a con-
tract to him to sign which the plaintiff afterwards returned
without signing, the principal objection to it being the
clause providing for forfeiture in case of default.   The
plaintiff continued in possession cultivating the land until
and including the year 1883.   On the 2d of April, 1883,
the defendant, Samuel Spanogle, presented a mortgage
upon the land in question, duly prepared for the plaintiff
and his wife to sign and acknowledge, and return to him.
This mortgage was to secure a note for $75 to be given
by the plaintiff to the defendants, due on the 1st of De-
cember, 1883, with interest at ten per cent; one note for
$75 with interest at ten per cent due on the 1st day of
July, 1884 ; and one note for $72 due on or before Jan-
uary 1st, 1885, with interest at ten per cent.   These notes
and the mortgage were all dated by Samuel Spanogle
April 2, 1883, and drew interest from that date.   The
plaintiff testifies that when Spanogle presented the notes
and mortgage to him to execute that he, Spanogle, said he,
the plaintiff, could execute the notes and mortgage and
return them to the defendants "any time whenever it
suited me," and all the testimony shows that no definite
time was fixed.   On the 2d of April, 1883, the plaintiff
and defendant Samuel Spanogle had a settlement, and it
was found there was due from the defendants to the plain-
tiff the sum of $50.35 with which he was credited as the
first payment.   Of this sum $45 was *interest* upon *monthly
balances* due the plaintiff from the defendants for labor

performed by him for them, showing that he must have been in their service for a long time. And we infer from reading the testimony that a very friendly feeling existed between the parties until this difficulty occurred, and a desire on the part of the defendants to aid the plaintiff in procuring a home. In such cases there is liable to be more laxity in making the contract, and perhaps in its enforcement, because each party trusts more or less to the sense of honor of the other. In this case this is shown in the delay in making the deed, notes, and mortgage, and which, under all the circumstances, is not unreasonable. The plaintiff executed the notes and mortgage early in July, 1883, but did not tender them to the defendants till the 30th of that month, when they refused to receive them, claiming that the contract was canceled. It is claimed, too, that the defendant, A. J. Spanogle did not make the contract or give his assent to it. The testimony, however, tends to show that himself and brother Samuel held this land as partners; that Samuel Spanogle was the partner who made sales, and this, too, in some cases without consulting his brother. The testimony also shows not only this knowledge of A. J., but that he assisted in making the contract. The plaintiff testifies on cross-examination: "I spoke to A. J. some time in the spring."

Q. What was the conversation with A. J. Spanogle?

A. It was in regard to the price, and whether or not he would give me a chance to pay for the land, and if I was not able to make the payments they were to carry it along for me. He told me whatever Sam and I agreed upon was satisfactory to him.

Q. You and A. J. agreed on the thing satisfactorily, did you?

A. Five dollars per acre was what we arrived at, and I was to go and fix it up with Sam.

Q. He told you to go to Sam and fix it up, did he?

A. Yes, sir.

This is not denied by Mr. A. J. Spanogle. He testifies: "He (the plaintiff) asked me what we were going to charge him for this land, and I asked him if $5 per acre was too much, and he said it was. That I replied in this way, that $5 was not too much when we considered the average price of the land, and that it ought to be that much the way we paid for it; and he did not say whether he was going to take it, and I did not say he should have it. It was simply a conversation in regard to the value of it in case he took it."

Q. Did he ever agree with you to take the land?

A. No, sir, there was no bargain about it.

This conversation took place in the spring of 1880 or 1881. His testimony also tends to show a number of conversations with the plaintiff, running through a series of years, wherein he expressed a desire to aid him in procuring a piece of land. There is certainly sufficient evidence in the record to show the assent of the defendant to the contract. Time is not of the essence of the contract in this case, neither from the contract itself, nor from the circumstances connected with it. The mortgage and notes delivered on the 30th of July, 1883, were dated and drew interest from April 2d of that year, so that the defendants could not suffer loss on that account. The remaining consideration was a mortgage given on the land in question by the defendants, which the plaintiff was to assume. The defendants, therefore, in no manner or form suffered by the delay, while the testimony shows that the land itself, the security, increased in value 50 per cent during the spring of 1883. Upon the whole case, we are of the opinion that a clear and definite verbal contract for the sale of the land in controversy is established both by the pleadings and proof; and that such acts of part performance thereunder have been done by the plaintiff as to entitle him to a decree. The decree of the district court is therefore reversed; and as the entire considera-

tion secured by the mortgage is now due, the plaintiff, within sixty days from this date, is required to pay to the clerk of this court for the use of the defendants the sum of $212, with interest at 10 per cent from the 2d day of April, 1883, and within ten days thereafter the defendant shall execute a good and sufficient deed to the plaintiff for said land, subject, however, to the mortgage set forth in the contract, and in case of their failure to execute and deliver deed aforesaid within ten days from the payment of the consideration, the clerk of this court is hereby appointed a special commissioner to execute a deed to the plaintiff in the names of the defendants for said premises.

A decree will be entered in conformity to this opinion.

DECREE ACCORDINGLY.

THE other judges concur.